1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  R. TRAVIS CAMPBELL (SBN 271580)
   tcampbell@snllp.com
3  LIANA MAYILYAN (SBN 295203)
   lmayilyan@snllp.com
4  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
5  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
6  Facsimile:  (415) 352-2625

7

8  Attorneys for Defendant
   Portfolio Recovery Associates, LLC

9

                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13  ZOE LETTY JAMES, individually      )  CASE NO.  14-cv-03889 RMW
    and on behalf of all others similarly )
14  situated,                          )
                                       )  **NOTICE OF MOTION AND MOTION**
15            Plaintiff,               )  **TO COMPEL ARBITRATION;**
                                       )  **MEMORANDUM OF POINTS AND**
16        v.                           )  **AUTHORITIES IN SUPPORT**
                                       )
17                                     )
                                       )  Date:      February 20, 2015
18  PORTFOLIO RECOVERY                 )  Time:      9:00 a.m.
    ASSOCIATES, LLC,                   )  Courtroom: 6 - 4th Floor
19                                     )
             Defendant.                )
20                                     )  Hon. Ronald M. Whyte
                                       )
21  _____   )

22

23

24

25

26

27

28

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 20, 2015 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6, on the 4th Floor of this Court, located at the San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, the Honorable Ronald M. Whyte presiding, defendant PORTFOLIO RECOVERY ASSOCIATES, LLC ("PRA") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), for an Order compelling plaintiff ZOE LETTY JAMES ("James") to arbitrate the claims she asserts in this action on an individual basis.  PRA further seeks an Order staying this action pending completion of arbitration proceedings.

This Motion is made on the grounds that a valid, enforceable and irrevocable agreement to arbitrate exists between the parties that encompasses the claims brought by James.  Pursuant to the FAA, upon election by either party, James must arbitrate her claims on an individual basis, as required by the arbitration agreement in the cardholder agreement James entered into with the original creditor, HSBC Bank Nevada, N.A., when she opened the credit card account.  Pursuant to the FAA, this action must be stayed pending completion of the arbitration.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Dianna Williams and Stuart Austin, the Request for Judicial Notice, all papers and pleadings on file, and all other evidence or argument the Court may permit at the hearing in this matter.

DATED: January 8, 2015

SIMMONDS & NARITA LLP
TOMIO B. NARITA
R. TRAVIS CAMPBELL
LIANA MAYILYAN

By:   s/R. Travis Campbell
R. Travis Campbell
Attorneys for Defendant
Portfolio Recovery Associates, LLC

## Table of Contents

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.     James' Claims Are Subject To Binding Arbitration Pursuant To The
               Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

               1.      The Arbitration Agreement Is Valid And Enforceable By PRA
                       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

               2.      The Claims Filed By James Fall Squarely Within The Scope Of
                       The Arbitration Agreement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.     James' Claims Must Proceed To Arbitration On An Individual Basis
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.     This Action Must Be Stayed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

**Table of Authorities**

2

**Federal Cases**

3   *AT&T Tech., Inc. v. Communications Workers of Am.,*
    475 U.S. 643 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

4
    *Funderburke v. Midland Funding, LLC*
5   2013 WL 394198 (D. Kan. Feb. 1, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

6   *Accord Fleet Tire Serv. v. Oliver Rubber Co.,*
    118 F. 3d 619 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7
    *Ackerberg v. Citicorp USA, Inc.*
8   898 F. Supp. 2d 1172 (N.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9   *Allied-Bruce Terminix Cos. v. Dobson*
    513 U.S. 265 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
10
    *Arellano v. T-Mobile USA, Inc.*
11  2011 WL 1842712 (N.D. Cal. May 16, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12  *AT&T Mobility LLC v. Concepcion*
    131 S. Ct. 1740 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 13-15
13
    *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*
14  585 F.2d 39 (3d Cir. Pa. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15  *Bellows v. Midland Credit Management, Inc.*
    2011 WL 1691323 (S.D. Cal. May 4, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15
16
    *Boomer v. AT&T Corp.*
17  309 F.3d 404 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18  *Buckeye Check Cashing, Inc. v. Cardegna*
    546 U.S. 440 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
19
    *Cage v. CACH, LLC*
20  2014 WL 2170431 (W.D. Wash. May 22, 2014). . . . . . . . . . . . . . . . . . . . . . . . 5, 10

21  *Caudill v. Cavalry SPV I, LLC,*
    WL 4230811 (E.D. K.Y. Aug. 25, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
22
    *Cayanan v. Citi Holdings, Inc.*
23  928 F. Supp. 2d 1182 (S.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

24  *Chan v. Society Expeditions, Inc.*
    123 F. 3d 1287 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25
    *Chavez v. Bank of America*
26  2011 WL 4712204 (N.D. Cal. Oct. 7, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
    207 F.3d 1126 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

*Circuit City Stores, Inc. v. Adams*
279 F. 3d 889 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Collins & Aikman Products Co. v. Building Systems, Inc.*
58 F. 3d 16 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Collins v. Burlington N. R. Co.*
867 F. 2d 542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Comedy Club, Inc. v. Improv W. Assocs.*
553 F. 3d 1277 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cruz v. Cingular Wireless, LLC*
648 F. 3d 1205 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Day v. Persels & Assocs., LLC*
No., 2011 WL 1770300 (M.D. Fla. May 9, 2011). . . . . . . . . . . . . . . . . . . . . . 15

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Decker v. Advanced Call Center Technologies, LLC*
WL 49716771 (W.D. Mich. Oct. 3, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*EEOC v. Waffle House, Inc.*
534 U.S. 279 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Galbraith v. Resurgent Capital Services,*
2006 WL 2990163 (E.D. Cal. Oct. 19, 2006). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gay v. Creditinform*
511 F.3d 369, 388-89 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gray v. Suttell & Associates*
2012 WL 1951657 (E.D. Wash. March 19, 2012). . . . . . . . . . . . . . . . . . . . . 11

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Guerrero v. Equifax Credit Info. Services, Inc.*
2012 WL 7683512 (C.D. Cal. Feb. 24, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Herrington v. Union Planters Bank, N.A.*
113 F. Supp. 2d 1026 (S.D. Miss. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hill v. Gateway 2000, Inc.*
105 F.3d 1147 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jallo v. Midland Funding, LLC*
2014 WL 5810203 (S.D. Cal. Nov. 6, 2014). . . . . . . . . . . . . . . . . . . . . 5, 7, 10

*Johnston v. Arrow Financial Services, LLC*
2006 WL 2710663 (N.D. Ill. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kaltwasser v. AT&T Mobility LLC*
812 F. Supp. 2d 1042 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*KPMG LLP v. Cocchi*
132 S. Ct. 23 (2011)............................................. 13

*Lagrone v. Advanced Call Center Technologies, LLC*
2014 WL 4966738 (W.D. Wash. Oct. 2, 2014)........................ 7

*Marsh v. First USA Bank, N.A.*
103 F. Supp. 2d 909 (N.D. Tex. 2000)............................. 10

*Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.*
789 F.2d 1281 (7th Cir.1986).................................... 10

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*
858 F.2d 825 (2d Cir. 1988)..................................... 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614 (1985)............................................. 6

*Montalbano v. Razor Portfolio Services, LLC*
2013 WL 593988 (W.D. Pa. Feb. 15, 2013)........................ 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983)............................................. 4, 6

*MRT Construction Inc. v. Hardrives*
158 F. 3d 478 (9th Cir. 1998)................................... 5

*Murphy v. DirectTV, Inc.*
2011 WL 3319574 (C.D. Cal. Aug. 2, 2011)........................ 9

*Nedlloyd Lines B.V. v. Superior Court*
3 Cal. 4th 459 (1992)........................................... 7

*Perry v. Thomas*
482 U.S. 483 (1987)............................................. 4

*Police v. Nat'l Tax Funding, L.P.*
225 F. 3d 379 (3d Cir. 2000).................................... 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
388 U.S. 395 (1967)............................................. 4

*Shearson/American Express, Inc. v. McMahon*
482 U.S. 220 (1987)............................................. 6

*Sorge v. Razor Portfolio Services, LLC*
2011 WL 4729703 (S.D. Ill. Oct. 5, 2011)....................... 11

*Southland Corp. v. Keating*
465 U.S. 1 (1984)............................................. 6, 15

*Stiles v. Home Cable Concepts*
994 F. Supp. 1410 (M.D. Ala. 1998)............................. 10

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*
559 U.S. 662 (2010)...................................... 4, 5, 13, 14

*Tickanen v. Harris & Harris, LTD*
461 F. Supp. 2d 863 (E.D. Wis. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Childs*
5 F. 3d 1328 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Volt Info. Scis.. Inc. v. Board of Trs. of Leland Stanford Junior Univ.*
489 U.S. 468 (1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 15

*Wolf v. Langemeier*
2010 WL 3341823 (E.D. Cal. Aug. 24, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zarandi v. Alliance Data Sys. Corp.*
2011 WL 1827228 (C.D. Cal. May 9, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**State Cases**

*Binder v. Aetna Life Ins. Co.*
75 Cal. App. 4th 832 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.*
188 Cal. App. 4th 401 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grasso v. First USA Bank*
713 A.2d 304 (Del. Super. Ct. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Washington Mut. Bank, FA v. Superior Court*
24 Cal. 4th 906 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes**

9 U.S.C. § 1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. §1692.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9 U.S.C. § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**State Statutes**

Cal. Civil Code §1788.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the United States Supreme Court reaffirmed the strong policy favoring enforcement of private agreements to arbitrate disputes, as reflected in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA").  Plaintiff Zoe Letty James ("James") entered into a credit card agreement with HSBC Bank Nevada, N.A. ("HSBC"), and she agreed to a broad arbitration provision, whereby any claims against the HSBC or its successors in interest would be resolved through binding, individual (non-class action) arbitration. Capital One Bank, (USA), N.A. ("Cap One") purchased her account and then sold it to defendant Portfolio Recovery Associates, LLC ("PRA").  All rights under the credit card agreement, including the right to arbitrate, were assigned to PRA, which now stands in the shoes of HSBC and Cap One.  PRA may and now does invoke the arbitration provision.

The claims asserted in this action by James against PRA are subject to the broad arbitration agreement, because they are based on written statements allegedly made by PRA while seeking to collect the account.  The motion to compel arbitration should be granted and the action stayed pending the resolution of the arbitration.

### II.    STATEMENT OF FACTS

James asserts claims against PRA under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §1788 *et. seq*. ("Rosenthal Act"), which arise out of PRA's alleged efforts to collect James' delinquent HSBC credit card account ending in 4555 (the "Account").  *See* Complaint ("Doc. No. 1") at ¶¶ 8-21; Declaration of Dianna Williams In Support of Notice of Motion and Motion to Compel Arbitration ("Williams Decl.") ¶¶ 5-6.[1]  James admits she incurred the debt and defaulted on the

---

[1] The last four digits of the Account when it was originated were 4558.  *See* Williams Decl at ¶ 12.  In March 2012, the account number changed and the last four

Account.  *See* Complaint at ¶¶ 8-9.  The Account records show she used it to make purchases, which were reflected on the statements HSBC sent to her every month. *See* Williams Decl. at ¶ 7, Ex. C.[2]

On May 1, 2012, Cap One purchased the Account.  *See* Declaration of Stuart Austin ("Austin Decl.") at ¶ 2.  On December 31, 2012, Cap One charged off the Account.  *Id*. at ¶ 4, Ex. A.[3]  On January 17, 2013, Cap One sold the Account to PRA. Williams Decl. at ¶¶ 5-6.  As part of the sale, PRA received all right, title and interest in the Account.  *Id*. at ¶ 6.[4]

The Account, like all credit card accounts, is subject to written terms and conditions, as reflected in the Cardmember Agreement And Disclosure Statement ("Cardmember Agreement" or "Agreement").  *See* Austin Decl. at ¶ 5, Ex. B; Williams Decl. at ¶ 7, Ex. D.[5]  Page 11 of the Agreement contains an "Arbitration"

---

digits became 4555.  *Id*.

[2] Copies of every monthly billing statement that was sent to James reflecting activity on the Account are attached to Ms. Williams' declaration as **Exhibit C**. Williams Decl at ¶¶ 7, 11, Ex. C.  None of the statements were returned as undeliverable. *Id*. at ¶¶ 10-11.

[3] A copy of the charge off statement that was sent to James is attached to Mr. Austin's declaration as **Exhibit A**.

[4] James does not dispute this chain of title.  *See* Complaint ¶ 9 (alleging transfers from HSBC to PRA "either directly or through a series of intermediate assignees" and "HSBC Bank Nevada, N.A. retained no interest in Plaintiff's defaulted account after the sale, assignment, and transfer of the debt to [PRA]").

[5] This is the agreement that was issued to James at the time the Account was opened.  *See* Austin Decl. at ¶ 5.  HSBC did not issue any subsequent agreements or changes in terms to the original Cardmember Agreement.  *See* Williams Decl. at ¶¶ 9-11. After Cap One purchased the Account, Cap One also did not issue any subsequent agreements or changes in terms.  *See* Austin Decl. at ¶ 5.

provision ("Arbitration Agreement").  *Id.* at on p. 11.[6]  The Arbitration Agreement provides that any "Claim" that arises between James and HSBC, or any other "Covered Person," including successors in interest, upon demand of James, HSBC or any other "Covered Person" shall be resolved "by binding arbitration" pursuant to the terms of the Arbitration Agreement  *Id.* on p. 11-12.   The parties to the Arbitration Agreement waived the right to a jury trial or court trial, and agreed that neither party shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class. *Id.* on p. 13.  In short, either party may elect mandatory binding arbitration on an individual, non-class basis.

As the assignee of all of HSBC's right, title and interest in the Account, PRA stands in the shoes of HSBC.  By this motion, PRA elects to proceed with mandatory binding arbitration of the claims on an individual, non-class basis.

## III.   ARGUMENT

### A.   James' Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement

#### 1.   The Arbitration Agreement Is Valid And Enforceable By PRA

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility*, 131 S. Ct. at 1748 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . . ."). The Supreme Court has repeatedly recognized that the FAA is extremely broad

---

[6] The page numbers of the Agreement refer to the numbers that appear below each column of text in the Agreement.

1   and applies to any transaction directly or indirectly affecting interstate commerce.

2   *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima*

3   *Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).

4        The FAA promotes a "liberal federal policy favoring arbitration agreements,"

5   and "questions of arbitrability must be addressed with a healthy regard for the federal

6   policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

7   460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987)

8   (arbitration agreements falling within the scope of the FAA "must be 'rigorously

9   enforce[d]'" (citations omitted)); *AT&T Mobility LLC*, 131 S. Ct. at 1745. Indeed, as

10  recently confirmed by the Supreme Court, the "'principal purpose' of the FAA is to

11  'ensur[e] that private arbitration agreements are enforced according to their terms.'"

12  *AT&T Mobility LLC*,  131 S. Ct. at 1748.[7]

13       In short, the "overarching purpose of the FAA, evident in the text of §§ 2, 3

14  and 4, is to ensure the enforcement of arbitration agreements according to their terms

15  so as to facilitate streamlined proceedings." *AT&T Mobility*, 131 S. Ct. at 1748.

16  Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the

17  terms of the agreement' upon the motion of either party to the agreement . . . ." *Id.*

18  The Supreme Court has held that the FAA "leaves no place for the exercise of

19  discretion by a district court, but instead mandates that district courts shall direct the

20  parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

21  218 (1985) (emphasis in original).

22       By consenting to bilateral arbitration, the "parties forgo the procedural rigor

23  and appellate review of the courts in order to realize the benefits of private dispute

24  resolution: lower costs, greater efficiency and speed, and the ability to choose expert

25  adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 559 U.S. at 685 (citations

26

27       [7] *See also Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*,

28  489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (citations omitted).

omitted).[8]  Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility*, 131 S. Ct. at 1748-49 (citations omitted).[9]  Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen*, 559 U.S. at 684; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

In this case, James and HSBC expressly agreed:

> This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA").  The arbitrator shall apply substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law upon request.

*See* Austin Decl. at ¶ 5, Ex. B on p. 11 ("Federal Arbitration Act").[10]

---

[8]  "Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'" *Id.* 559 U.S. at 683 (citations omitted).

[9]  In fact, the "point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . . And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id.* at 1749.

[10]  *See also* Williams Decl. at ¶ 7, Ex. D. on p. 11 (attaching the same Cardmember Agreement).  Both Mr. Austin and Ms. Williams may properly authenticate the Cardmember Agreement and testify to its contents. *See, e.g., Jallo v. Midland Funding, LLC*, 2014 WL 5810203, *2 (S.D. Cal. Nov. 6, 2014) (granting motion to compel arbitration by purchaser of plaintiff's delinquent credit card account; purchaser's witness could properly authenticate card agreement); *Cage v. CACH, LLC*, 2014 WL 2170431, **1-4 (W.D. Wash. May 22, 2014) (same; purchaser could testify about the seller's business records where it received records from the seller, incorporated them into purchaser's records and relied upon them for accuracy); *see also MRT Construction Inc. v. Hardrives,* 158 F. 3d 478, 483 (9th Cir. 1998) (no error to admit legal bills generated by outside law firm; client maintained them in its files, and relied upon them as accurate statement of fees owed to the law firm); *United States v. Childs*, 5 F. 3d 1328, 1333 (9th Cir. 1993) (affirming the admission of certificate of title, purchase orders and odometer records maintained by automobile dealers even though the dealers did not "make" the

1   Under the FAA, arbitration must be compelled where, as here: (1) a valid,

2   enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the

3   scope of that agreement.  *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys.*, Inc., 207

4   F.3d 1126, 1130 (9th Cir. 2000).  An arbitration agreement governed by the FAA is

5   presumed to be valid and enforceable.  *See Shearson/American Express, Inc. v.*

6   *McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-*

7   *Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).[11]

8   The FAA "establishes that, as a matter of federal law, any doubts concerning

9   the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

10  *Cone*, 460 U.S. at 24-25.[12]  The party resisting arbitration bears the burden of

11  showing the arbitration agreement is invalid or does not encompass the claims at

12  issue.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

13  "[W]here the contract contains an arbitration clause, there is a presumption of

14  arbitrability."  *Comedy Club, Inc. v. Improv W. Assocs.,* 553 F. 3d 1277, 1284 (9th

15  Cir. 2009).  James cannot contend that the Agreement, which includes the Arbitration

16  Agreement, was not effective or valid.

17  Whether parties have agreed to arbitration is a question of state contract law.

18  *See Circuit City Stores, Inc. v. Adams,* 279 F. 3d 889, 892 (9th Cir. 2002).  Here, the

19  Cardmember Agreement contains a choice of law provision stating that the Account

20  

21  documents: "In effect, they were integrated into the records of the dealership and were
    used by it.") (citation omitted).

22  

23  [11]  The FAA preempts any state law "to the extent that [the state law] stands as an
    obstacle to the accomplishment and execution of the full purposes and objectives of

24  Congress" in passing the FAA.  *Volt*, 489 U.S. at 477 (internal quotation marks and
    citations omitted); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking

25  down California law that sought to insulate certain issues from arbitration).

26  

27  [12] *See also Gay v. Creditinform*, 511 F.3d 369, 388-89, 394 (3d Cir. 2007) (quoting
    *Volt*, 489 U.S. at 479) (holding that "[a]n agreement to arbitrate is valid, irrevocable, and

28  enforceable, as a matter of federal law, 'save upon such grounds as exist at law or in
    equity for the revocation of any contract'" (emphasis in original)).

1   will be governed by "federal law and, to the extent state law is applicable, the laws of

2   the state Nevada, whether or not you live in Nevada and whether or not your Account

3   is used outside Nevada."  Austin Decl. at ¶ 5, Ex. B on p. 14.  Because the claims

4   asserted by James arise under federal law,[13] the Court applies federal common law to

5   determine if the choice of law provision should be enforced.  *See Chan v. Society*

6   *Expeditions, Inc.*, 123 F. 3d 1287, 1297 (9th Cir. 1997); *Lagrone v. Advanced Call*

7   *Center Technologies, LLC*, 2014 WL 4966738, *4 (W.D. Wash. Oct. 2, 2014)

8   (applying Utah choice of law provision in credit card agreement and granting

9   collector's motion to compel arbitration); *Jallo*, 2014 WL 5810203 at *2 (applying

10  Arizona choice of law provision in credit card agreement and granting debt buyer's

11  motion to compel arbitration).  Federal common law follows section 187 of the

12  Restatement (Second) of Conflicts Law.  *Chan*, 123 F. 3d at 1297.

13          Under section 187, the Court should enforce the choice of law provision if the

14  issue "is one which the parties could have resolved by an explicit provision in their

15  agreement directed to that issue."  *Lagrone*, 2014 WL 4966738 at *4 (quoting section

16  187 of the Restatement).  Even if the parties could not have directed a contractual

17  provision to the issue, the choice of law provision must still be enforced unless "the

18  chosen state has no substantial relationship to the parties or the transaction and there

19  is no other reasonable basis for the parties' choice" or "application of the law of the

20  chosen state would be contrary to a fundamental policy of a state which has a

21  materially greater interest than the chosen state in the determination of the particular

22  issue."  *Id*.; *see also Chan*, 123 F. 3d at 1297.[14]

23          Here, the Nevada choice of law provision in the Cardmember Agreement

24  should be enforced.  First, the issue of whether a successor in interest, like PRA, can

---

[13] Complaint at ¶ 2.

[14] To the extent James argues that California law applies, California courts also
follow section 187 of the Restatement. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.
4th 459, 466 (1992); *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918
(2001).

enforce the Arbitration Agreement was specifically addressed in the Cardmember Agreement. *See* Austin Decl. at ¶ 5, Ex. B on p. 12 ("Covered Persons"). Second, Nevada has both a "substantial relationship" with the dispute and there was "a reasonable basis" for choosing Nevada law. The original creditor – HSBC – was located in Nevada. *See* Austin Decl. at ¶ 5, Ex. B on p. 14 ("Applicable Law") ("The Agreement is entered into in Nevada, your Account is maintained in Nevada, and all credit under this agreement will be extended from Nevada"); Defendant's Request for Judicial Notice in Support of Motion to Compel Arbitration, Ex. 1 (HSBC was located in Las Vegas, Nevada).[15]  Finally, Nevada's law is not contrary to any fundamental policy of California. As a result, Nevada law governs the Account.

Page 1 of the Agreement under the heading "**AGREEMENT TO TERMS AND DEFINITIONS**," expressly provides, in relevant part:

> You and we are bound by this Agreement from the earlier of the time you receive it or from the date of the first transaction, including without limitation, the placement or posting of any Annual Fee or Periodic Membership Fee on your Account. You may close your Account before using it without paying any Annual Fee, or Periodic Membership Fee if applicable to your Account, when you call use within 90 days of your Account open date at the customer service number on the back of your Card.

*See* Austin Decl. at ¶ 5, Ex. B on p. 1 (bold and capital letters in original). James used the credit card to make purchases, thereby accepting the benefits conferred upon her by HSBC, before eventually defaulting on the Account. *See* Complaint at ¶¶ 8-9; *see also* Williams Decl at ¶ 7, Ex. C (identifying purchases made on the Account).[16]

---

[15]  *Cf Guerrero v. Equifax Credit Info. Services, Inc.*, 2012 WL 7683512, **3-5 (C.D. Cal. Feb. 24, 2012) (enforcing South Dakota choice of law provision in Citibank credit card agreement; Citibank was located in South Dakota); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176-77 (N.D. Cal. 2012) (same); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1194-95 (S.D. Cal. 2013) (reasonable basis for designating Nevada law in student loan contract because issuer operated through out the country and single set of laws governing agreement was reasonable).

[16] To the extent James argues she does not remember receiving the Agreement or monthly statements, her poor memory is not a basis for refusing to compel arbitration. *See Johnston v. Arrow Financial Services, LLC*, 2006 WL 2710663, *4 (N.D. Ill. 2006)

1   This is consistent with Nevada law, which states that after receiving a written

2   credit card agreement, "[a] cardholder shall be deemed to have accepted written terms

3   and conditions provided by the issuer upon subsequent actual use of the credit card."

4   *See* N.R.S. 97A.140(2).[17]   Under the terms of Cardmember Agreement and Nevada

5   law, James agreed to the terms of the Agreement, including the Arbitration

6   Agreement, by using the Account.[18]

---

8   (plaintiff's failure to recall receiving Capital One card agreement and statements are

9   insufficient to defeat motion to compel arbitration by third party debt collector).

10   [17]   Even if the Court were to apply California law, the result is the same, as James

11   assented to the terms of the Agreement by her failure to object and her use of the card.

12   *See, e.g., Chavez v. Bank of America,* 2011 WL 4712204, **8-9 (N.D. Cal. Oct. 7, 2011)

13   (failure to object to Bank of America credit card agreement mailed to plaintiffs

14   constituted consent to arbitration provision in agreement); *Murphy v. DirectTV, Inc.,*

15   2011 WL 3319574, *2 (C.D. Cal. Aug. 2, 2011) (failing to object to agreement sent to

16   customer containing arbitration provision constitutes consent to agreement); *see also*

17   *Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.,* 188 Cal. App. 4th 401, 422 (2010)

18   ("Mutual assent is determined under an objective standard applied to the outward

    manifestations or expressions of the parties."); *Binder v. Aetna Life Ins. Co.*, 75 Cal.

    App. 4th 832, 850 (1999) ("To form a contract, manifestation of mutual assent is

    necessary . . . Mutual assent may be manifested by written or spoken words, or by

    conduct.").

19   [18]   Numerous other courts agree.  *See Boomer v. AT&T Corp.*, 309 F.3d 404, 415

20   (7th Cir. 2002) (customer accepted contract by failing to follow the non-acceptance

21   instructions and continuing to use the services); *Hill v. Gateway 2000, Inc.*, 105 F.3d

22   1147 (7th Cir. 1997) (computer purchaser, by electing to keep the computer rather than

23   returning it within a specified time period, agreed to be bound by an arbitration provision

24   with seller); *Decker v. Advanced Call Center Technologies, LLC,* WL 49716771, **1-3

25   (W.D. Mich. Oct. 3, 2014) (plaintiff accepted arbitration in credit card agreement by

26   using card and failing to object); *Tickanen v. Harris & Harris, LTD,* 461 F. Supp. 2d

27   863, 867 (E.D. Wis. 2006) (plaintiff accepted credit card contract by failing to take

28   affirmative action not to accept agreement); *Herrington v. Union Planters Bank, N.A.*,

    113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of

    the arbitration agreement by continuing to utilize their accounts."); *Marsh v. First USA*

    *Bank, N.A.*, 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000) ("Plaintiffs continued to use their

    First USA credit cards after receipt of the amendments.  Therefore, Plaintiffs . . . are

    contractually bound by the arbitration provision of their Cardmember Agreements.");

1  The Agreement also expressly provides that HSBC could assign the Account

2  and the Agreement at its sole discretion:

3  > We may sell assign or transfer your Agreement and Account or any
   > portion thereof without notice to you. . . . If we assign your Account, the
4  > assignee shall have the same rights as we do under this Agreement.

5  *See* Austin Decl. at ¶ 5, Ex. B on p. 14 ("Assignment of Account").  Here, the

6  Agreement (and the Arbitration Agreement) were assigned twice, first from HSBC to

7  Cap One, then from Cap One to PRA.  *Id.* at ¶ 2; Williams Decl. at ¶¶ 5-6.  PRA, as

8  assignee and successor in interest of HSBC, may enforce the Arbitration Agreement.

9  *See, e.g., Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.*, 789 F.2d 1281,

10  1282 (7th Cir.1986) (successor in interest to railroad company had the duty to

11  arbitrate under arbitration clause contained in a contract signed by its predecessor

12  with third parties); *Jallo*, 2014 WL 5810203 at **3-7; *Caudill v. Cavalry SPV I, LLC,*

13  WL 4230811, **1-7 (E.D. K.Y. Aug. 25, 2014) (granting debt buyer's motion to

14  enforce arbitration provision in plaintiff's credit card agreement); *Decker v. Advanced*

15  *Call Center Technologies, LLC,* WL 49716771, **1-3 (W.D. Mich. Oct. 3, 2014)

16  (same); *Cage*, 2014 WL 2170431 at **1-4 (same); *Tickanen,* 461 F. Supp. at 869-72

17  (same); *Funderburke v. Midland Funding, LLC,* 2013 WL 394198, **3-8 (D. Kan.

18  Feb. 1, 2013) (same); *Montalbano v. Razor Portfolio Services, LLC*, 2013 WL

19  593988, **2-6 (W.D. Pa. Feb. 15, 2013) (debt buyer assignee of bank could enforce

20  arbitration agreement); *Funderburke v. Midland Funding*, 2013 WL 394198 (D. Kan.

21  Feb. 1, 2013) (same); *Gray v. Suttell & Associates*, 2012 WL 1951657 (E.D. Wash.

22  March 19, 2012) (same); *Sorge v. Razor Portfolio Services, LLC*, 2011 WL 4729703

23  (S.D. Ill. Oct. 5, 2011) (same); *Bellows v. Midland Credit Management, Inc*., 2011

24

25  _____

26  *Stiles v. Home Cable Concepts*, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing
    arbitration provision in amendment to a credit card agreement where plaintiff maintained
27  his account after the effective date of the arbitration clause); *Grasso v. First USA Bank*,
    713 A.2d 304, 309 (Del. Super. Ct. 1998) (plaintiff "unequivocally manifested
28  acceptance" of her cardholder agreement by making purchases and payments on her
    account).

WL 1691323 (S.D. Cal. May 4, 2011) (same); *Galbraith v. Resurgent Capital Services,* 2006 WL 2990163 at *1 (E.D. Cal. Oct. 19, 2006) (assignee of consumer account entitled to invoke arbitration clause in contract between consumer and assignor); *Wolf v. Langemeier,* 2010 WL 3341823 at *4 (E.D. Cal. Aug. 24, 2010) (staying action pending arbitration and holding that "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed"); *see also Police v. Nat'l Tax Funding, L.P.*, 225 F. 3d 379, 414 (3d Cir. 2000) ("[A]ssignee . . . stands in the shoes of the assignor").

The Arbitration Agreement also explicitly survives the "closure" of the Account, stating: "The arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder."  Austin Decl. at ¶ 5, Ex. B on p. 13-14 ("Miscellaneous").  Here, the Arbitration Agreement is valid and enforceable by PRA.

### 2.   The Claims Filed By James Fall Squarely Within The Scope Of The Arbitration Agreement

When the Court determines the parties have a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting distinction between "broad" clauses that purport to refer to arbitration of all disputes arising out of a contract, and "narrow" clauses that limit arbitration to specific types of disputes).  Where the clause is broad, as here, there is a heightened presumption of arbitrability such that "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a

1   purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at

2   650.[19]  The Arbitration Agreement here is extremely broad, and states:

3
> This arbitration provision shall apply to any **Claim** (defined below) by or
4   against us, or you or any other Covered Person (defined below).  You
> agree any **claim, dispute, or controversy (whether based upon**
5   **contract; tort, intentional or otherwise; constitution; statute;**
> **common law; or equity and whether preexisting, present, or future),**
6   including initial claims, counter-claims, cross-claims and third party
> claims, **arising from or relating to (a) this Agreement, your Account,**
7   **any transaction or activity involving any payment or failure to make**
> **payment on your Account, . . . or oral or written statements related**
8   **to this Agreement or your Account, . . .  shall be resolved, upon the**
> **election of you, us, or any Covered Person described below, by**
9   **binding arbitration** pursuant to this arbitration provision. . . .

10  *See* Austin Decl. at ¶ 5, Ex. B on p. 11 ("Claims and Arbitration Administrators")

11  (emphasis added).  The Agreement goes on to define a "Covered Person" in very

12  broad terms:

13
> The arbitration agreement covers Claims by or against (a) us, any
14  corporate parent, subsidiary, or affiliate, any predecessor or **successor** of
> the foregoing, and any officer, director, employee, agent or
15  representative of any of the aforementioned, . . . .

16  *Id*. on p. 12 ("Covered Persons") (emphasis added).

17      The Arbitration Agreement squarely covers the claims asserted here, which are

18  "statutory claims" that "arise from" and "relate to . . . the Account," specifically, the

19  claims arise from a "written statement" related to PRA's attempt to collect the unpaid

20  balance on the Account.  The Complaint alleges that PRA violated the FDCPA and

21  Rosenthal Act by "falsely" stating in a declaration made pursuant section 98 of the

22  California Code of Civil Procedure that the declarant was available service of process

23  at an address in Oakland, California, when, according to James, he was not.  *See*

24  Complaint at ¶¶ 10-21.  Although PRA believes these statutory claims lack merit,

25  they are related to the Account and specifically challenge "written statements" made

26

27      [19] *Accord Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F. 3d 619, 621 (8th Cir.
28  1997); *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F. 3d 16, 20 (2d Cir.
1995) (where the clause is broad, "then there is a presumption that the claims are
arbitrable")

1  in connection with the Account.  *See Becker Autoradio U.S.A., Inc. v. Becker*

2  *Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir. Pa. 1978) (arbitration agreement

3  including phrase "arising out of and about" encompasses matters that "[arise] in the

4  course of and during the on-going relationship … created and governed…" by the

5  contract containing the arbitration provision).

6       As the party resisting arbitration, James bears the burden of showing that the

7  Arbitration Agreement does not encompass her claims.  *See Green Tree Fin. Corp.-*

8  *Ala.*, 531 U.S. at 92.  Where the agreement is as broad as here, "only the most

9  forceful evidence of a purpose to exclude the claim from arbitration can prevail."

10  *AT&T Tech.*, 475 U.S. at 650.  James cannot meet her burden here.  She has no

11  evidence of any purpose to exclude her claims from arbitration.  To the contrary, they

12  fall squarely within the scope of the Arbitration Agreement.

13       **B.   James' Claims Must Proceed To Arbitration On An Individual Basis**

14       As recently confirmed by the Supreme Court, the FAA "leaves no place for the

15  exercise of discretion by a district court, but instead mandates that district courts *shall*

16  direct the parties to proceed with arbitration on issues to which an arbitration

17  agreement has been signed."  *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25-26 (2011)

18  (citations omitted; emphasis in original).  In *KPMG*, *AT&T Mobility,* and *Stolt-*

19  *Nielsen,* the Supreme Court mandated that arbitration agreements governed by the

20  FAA, like this one, must be enforced as written.  *See KPMG*, 132 S. Ct. at 25 (the

21  FAA "requires courts to enforce the bargain of the parties to arbitrate"); *AT&T*

22  *Mobility*, 131 S. Ct. at 1748 (the "'principal purpose' of the FAA is to 'ensur[e] that

23  private arbitration agreements are enforced according to their terms.'"); *Stolt-Nielsen*

24  *S.A.*, 556 U.S. at 683 (confirming that "[u]nderscoring the consensual nature of

25  private dispute resolution" is the notion that "parties are 'generally free to structure

26  their arbitration agreements as they see fit.'").  Here, James expressly agreed:

27       **Parties to Arbitration**

28       Arbitration shall be conducted in the name of individually named parties.
         Unless all parties consent, neither you nor we may join, consolidate, or
         otherwise bring claims regarding to or more accounts, individuals, or

account holders in the same arbitration. **There shall be no class action procedures, or other representative or collective actions, in an arbitration, even if the underlying dispute has been asserted in a court as a class action, private attorney general action, or other representative or collective action**.  No party may advance a claim in arbitration on behalf of or against a person in a representative or collective capacity, or on behalf of or against a person who is not an individually named party to the arbitration; nor may a party seek an award or benefit in arbitration on behalf of or against a person who is not an individually named party. The arbitrator shall not have authority to resolve any claim advanced by or on behalf of anyone who is not an individually named party, and shall not have the authority to make an award for the benefit of anyone who is not an individually named party; the arbitration shall not have the power to make an award against anyone who is not an individually named party.

(emphasis added).

### Consequence of Electing Arbitration

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION.  THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

*See* Austin Decl. at ¶ 5, Ex. B, on p. 13 (bold and capital letters in original).  This language is clear, conspicuous and it unequivocally demonstrates the parties' intent to arbitrate claims only on an individual (non-class) basis.  The Arbitration Agreement confers on the arbitrator only the authority to decide individual claims, and not to make any award, or consider any claims, by or relating to any other person.  The "FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S. Ct. at 1753 (emphasis added); *Stolt-Nielsen*, 556 U.S. at 687 (class arbitration may only be ordered when the parties expressly agree to it).

Furthermore, the FAA preempts state laws that attempt to regulate the terms of, and parties to, arbitration, or which seek to otherwise challenge the arbitration process based on the terms under which the arbitration will take place.  *See AT&T Mobility*, 131 S. Ct. at 1753 (abrogating California law invalidating arbitration agreements that contain a class action waiver because the law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress" in establishing the FAA) (internal quotations and citations omitted); *Volt Info. Scis.*, 489

U.S. at 477; *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

Since *AT&T Mobility* was issued, courts have confirmed that, under the FAA, state law challenges to arbitration agreements that contain class action waivers are not viable.[20] As a result, PRA may compel James to arbitrate her claims in this action on an individual (non-class) basis.

## C.   This Action Must Be Stayed

Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see AT&T Mobility LLC*, 131 S. Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"); *see also Collins v. Burlington N. R. Co.*, 867 F. 2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding

---

[20]  *See, e.g., Cruz v. Cingular Wireless, LLC,* 648 F. 3d 1205, 1215 (11th Cir. 2011) (affirming order granting motion to compel arbitration; in light of *AT&T Mobility* class action waiver in arbitration agreement was enforceable); *Kaltwasser v. AT&T Mobility LLC,* 812 F. Supp. 2d 1042, 1050 (N.D. Cal. 2011) (*AT&T Mobility* "forecloses plaintiffs from object to class-action waivers in arbitration agreements on the basis that the potential cost of proving a claim exceed potential individual damages"); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712, at *2-3 (N.D. Cal. May 16, 2011) (compelling arbitration of class claims for injunctive relief because *AT&T Mobility* "compels preemption . . . [of] California's exemption of claims for public injunctive relief from arbitration, at least for actions in federal court."); *Zarandi v. Alliance Data Sys. Corp.*, 2011 WL 1827228, at *2 (C.D. Cal. May 9, 2011) (compelling arbitration of class claims because *AT&T Mobility* confirms that "the FAA preempts state law to the extent it prohibits arbitration of a particular type of claim."); *Day v. Persels & Assocs., LLC*, No., 2011 WL 1770300, at *5 (M.D. Fla. May 9, 2011) (under *AT&T Mobility* arbitration agreement with class action waiver not unconscionable under Florida law); *Bellows v. Midland Credit Management, Inc.*, 2011 WL 1691323 at *3 (S.D. Cal. May 4, 2011) (compelling arbitration in putative class action because *AT&T Mobility* "mak[es] clear the agreement to arbitrate is not substantively unconscionable merely because it includes a class action waiver.").

arbitration agreement).  Accordingly, PRA requests that the Court stay this action pending completion of the arbitration.

**IV.   <u>CONCLUSION</u>**

For the forgoing reasons, the Court should grant this motion and issue an order compelling arbitration of Plaintiff's claims in accordance with the express terms of the valid and enforceable Arbitration Agreement.  In addition, the Court should stay this action pending the completion of arbitration proceedings.

DATED: January 8, 2015                          SIMMONDS & NARITA LLP
                                                TOMIO B. NARITA
                                                R. TRAVIS CAMPBELL
                                                LIANA MAYILYAN


                                          By:   s/R. Travis Campbell
                                                R. Travis Campbell
                                                Attorneys for Defendant
                                                Portfolio Recovery Associates, LLC