UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOE LETTY JAMES,<br><br>        Plaintiff,<br><br>    v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>        Defendant. | Case No. 14-cv-03889-RMW<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 18 |

Defendant Portfolio Recovery Associates ("PRA") moves to compel arbitration of the Fair Debt Collection Practices Act claims asserted by plaintiff Zoe James in this case. Dkt. No. 18. PRA's motion seeks an order compelling arbitration of James' claims, which James brought on behalf of herself and all others similarly situated, on an individual basis. *Id*. PRA also asks the court to stay this case pending the outcome of arbitration. *Id*. For the reasons set forth below, the court grants the motion to compel arbitration and stays the case.

**I. BACKGROUND**

James brought this class action asserting claims against PRA under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"). *See* Dkt. No. 1. James' claims arise out of PRA's communications attempting to collect James' delinquent credit card account (the "account") with HSBC Bank Nevada, N.A. *Id*.

James was issued a cardholder agreement for her credit card account, which provided written terms and conditions, including the arbitration agreement at issue here. Dkt. No. 18-3, at ¶ 5; ECF pp. 8–11. The arbitration clause provides, in relevant part:

> This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA"). The arbitrator shall apply substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law upon request.

Dkt. No. 18-3, at ECF p. 11. The parties to the arbitration agreement also waived the right to a jury trial or court trial, and agreed that neither party shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class. *Id*. at ECF p. 8.

After James incurred debt on the account and defaulted, on May 1, 2012 Capital One purchased the account from HSBC. Dkt. No. 18-3, at ¶ 2. On December 31, 2012, Capital One charged off the account, *id*. at ¶ 4; ECF pp. 4–6, and on January 17, 2013, sold the account to PRA. Dkt. No. 18-1, at ¶¶ 5-6. As part of the sale, PRA received all right, title and interest in the account. *Id*. at ¶ 6; *see also* Dkt. No. 1, at ¶ 9.

On May 27, 2014 PRA filed a lawsuit against James in the Superior Court of California, Santa Clara County captioned *Portfolio Recovery Associates, LLC v. Zoe L. James*, Case No. 1-14-CV-265849, in which PRA seeks to collect the defaulted consumer debt from James. On or about August 20, 2014, Defendant sent a document titled Declaration of Plaintiff in Lieu of Personal Testimony at Trial (CCP §98) directly to James. Dkt. No. 1, at ¶ 12. James alleges that Defendant's Declaration of Plaintiff in Lieu of Personal Testimony at Trial (CCP § 98) included deceptive misleading misrepresentations in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 692f. *Id*. at ¶ 43.

On August 27, 2014, James filed her Class Action Complaint against Defendant. Dkt. No. 1. Defendant answered on October 2, 2014, Dkt. No. 10, and on January 8, 2015, moved to compel arbitration of James' claims, Dkt. No. 18. James filed an opposition on January 22, 2015, Dkt. No. 22, and PRA replied on January 29, 2015, Dkt. No. 24.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under § 4 of the FAA, a district court must issue an

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW
EDB
- 2 -

order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citations omitted). The FAA's broad sweep reflects both the "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (internal quotation marks and citations omitted).

The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001). State law is not entirely displaced from the federal arbitration analysis, however. *See Ticknor*, 265 F.3d at 936–37. When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

"[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT&T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The party resisting arbitration bears the burden

of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**III. ANALYSIS**

Defendants move to compel binding arbitration and to stay the case pending arbitration. Dkt. No. 18. James opposes PRA's motion, arguing that for several reasons PRA cannot enforce the arbitration clause in the cardholder agreement at issue in this case. All of James' arguments are directed to the first prong of the two-part test on a motion to compel arbitration, and James does not contest that the claims at issue here are within the scope of the arbitration clause, except to the extent that she contends PRA is not authorized to enforce the arbitration clause. Accordingly, the court finds that the substantive issues which arise from James' complaint are within the scope of the arbitration agreement, and the court's analysis is limited to the questions of whether an arbitration clause exists and whether PRA may enforce it.

James does not dispute that she opened the account at issue in this case, *see* Dkt. No. 1, at ¶¶ 8-9, or that she used the credit card and thereby accepted the terms and conditions of the cardholder agreement.[1] However, James challenges the authentication of the cardholder agreement proffered by PRA, and argues that PRA cannot show the agreement is connected to James' account with HSBC. Dkt. No. 22, at 6–12. James also argues that: (1) PRA cannot enforce the arbitration agreement, *id.* at 3–6; (2) PRA constructively waived its rights under the arbitration agreement by bringing suit in state court, *id.* at 12–14; and (3) equity precludes enforcement of the arbitration agreement, *id.* at 14–14. The court addresses each argument below.

---

[1] The cardholder agreement provides that:

> You and we are bound by this Agreement from the earlier of the time you receive it or from the date of the first transaction, including without limitation, the placement or posting of any Annual Fee or Periodic Membership Fee on your Account. You may close your Account before using it without paying any Annual Fee, or Periodic Membership Fee if applicable to your Account, when you call us within 90 days of your Account open date at the customer service number on the back of your Card.

Dkt. No. 18-3, at 9.

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW
EDB
- 4 -

### A. Choice of law

Citing the terms of the cardholder agreement, PRA contends that Nevada law should apply in this action. While James does not directly address the question, she cites several California court cases regarding contract interpretation, and so the court infers that James' position is that California law applies. *See, e.g.*, Dkt. No. 22, at 3 (citing 7 Cal. Jur.3d Assignments § 35 (2003) and California appellate court cases).

Because this case is based on federal question jurisdiction, federal common law supplies the choice-of-law rules. *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997); *see also Jallo v. Midland Funding*, LLC, 2014 WL 5810203, *2 (S.D. Cal. Nov. 6, 2014). Federal common law follows Section 187 of the Restatement (Second) of Conflicts Law. *Chan*, 123 F. 3d at 1297. Section 187 of the Restatement applies where, as here, the contract at issue selects the law of a particular jurisdiction to govern disputes. *See id.*; Restatement (Second) of Conflicts of Laws § 187.

Under Section 187, courts honor the parties' choice-of-law to govern their claims in dispute, unless: (1) "the chosen state has no substantial relationship to the parties or the transaction" or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state that has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Laws § 187(2).

Here, the cardmember agreement provides that the account will be governed by "federal law and, to the extent state law is applicable, the laws of the state Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada." Dkt. No. 18-3, at ¶ 5; ECF p. 8. Nevada has both a "substantial relationship" with the dispute and there was "a reasonable basis" for choosing Nevada law: the original creditor, HSBC, was located in Nevada. See Dkt. No. 18-3, at ¶ 5; ECF p. 8. ("The Agreement is entered into in Nevada, your Account is maintained in Nevada, and all credit under this agreement will be extended from Nevada"). The court therefore finds that Nevada has a substantial relationship to this dispute. The court cannot discern any reason why application of Nevada's law is contrary to any fundamental policy of California, and James supplies none. Accordingly, pursuant to the agreement's choice of law provision, the court

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW
EDB                                            - 5 -

1   will apply Nevada law to the question of who is entitled to invoke the arbitration provision.

2   **B. PRA has shown the existence of an arbitration agreement**

3   James argues that PRA cannot authenticate the document entitled "Cardmember
4   Agreement and Disclosure Statement," and so cannot enforce the arbitration agreement contained
5   therein. Dkt. No. 22, at 6. Specifically, James challenges the declaration of Dianna Williams by
6   arguing that she is incompetent to establish the existence of an arbitration agreement. *Id*. at 6–11.

7   Before an item of evidence may be considered, Federal Rule of Evidence 901(a) requires a
8   proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that
9   the item is what the proponent claims it is." *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920,
10  925 (9th Cir. 1987). Such a foundation may be laid by testimony of a witness who has personal
11  knowledge. Fed. R. Evid. 901(b)(1).

12  Here, PRA offers two declarations to authenticate the cardmember agreement at issue: the
13  declaration of Dianna Williams, a Custodian of Records for PRA, *see* Dkt. No. 18-1, and the
14  declaration of Stuart Austin, Department Operations Manager of Asset Sales for Captial One
15  Services, *see* Dkt. No. 18-3. James challenges only the Williams declaration, and does so
16  principally on the ground that Ms. Williams' testimony is hearsay. Dkt. No. 22, at 6–11. However,
17  James does not challenge the Austin declaration. In his declaration, Austin states that:

> [Capital One's] business records reflect the fact that the Account was subject to written terms and conditions that are memorialized in a written customer agreement. [Capital One's] business records reflect that the document attached as Exhibit B is a true and correct copy of the customer agreement that governed the Account at the time the Account was opened with HSBC. [Capital One's] business records reflect that the Account did not receive a [Capital One] customer agreement after the Account was acquired by [Capital One].

23  Dkt. No. 18-3, at ¶ 5. As Department Operations Manager of Asset Sales for Captial One, Austin
24  is qualified to testify about Capital One business practices and procedures for receiving
25  information from third parties in connection with the sale of assets such as the account at issue.
26  Additionally, Austin is qualified to attest that the agreement received by Capital One is the
27  document that HSBC sent to Capital One. Accordingly, the court concludes that regardless of
28  whether the Williams declaration is sufficient to authenticate the cardholder agreement on its own,

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW EDB                - 6 -

1  because the agreement is sufficiently authenticated by the Austin declaration pursuant to Rule 901,

2  it is admissible.

3  James' related argument that PRA cannot show an agreement connected to her account

4  also fails for the same reasons. James does not dispute the Austin declaration, which specifically

5  states that James' account was subject to the terms and conditions memorialized in the cardholder

6  agreement attached to the Austin declaration. *Id.*[2]

### C. PRA can enforce the arbitration agreement

James next argues that PRA cannot enforce the arbitration agreement because the terms of the agreement do not authorize it to do so. Dkt. No. 22, at 3–6. Specifically, James asserts that "there is no blanket rule that an assignee to an account which may have been governed by an agreement containing an arbitration clause is per se able to compel arbitration." *Id*. at 6. According to James, under the terms of the agreement PRA must qualify as a successor to enforce the arbitration clause, which James contends PRA does not. *Id*. at 6–8. The court finds James' argument unavailing.

The arbitration clause of the agreement provides that it "shall apply to any Claim (defined below) by or against us, or you or any other Covered Person (defined below)." Dkt. No. 18-3, at ECF p. 11. The agreement defines "covered person" as:

> (a) us, any corporate parent, subsidiary, or affiliate, any predecessor or successor of the foregoing, and any officer, director, employee agent or representative of any of the aforementioned, (b) you and any authorized user, and any other person claiming through you and any authorized user, and (c) any other person assisting us in offering Cards, administering Accounts or providing Card related benefits or services.

*Id*. James concludes that PRA fits none of the criteria set forth in the above definition, and argues that "[w]hile the arbitration clause could have specifically included 'assigns' in the definition of covered persons, it did not." Dkt. No. 22, at 5. In the course of arguing that PRA does not qualify

---

[2] James also states, without any support, that PRA must "show that the proffered Cardmember Agreement was not thereafter superseded or replaced by another agreement." Dkt. No. 22, at 12. Again, James does not address, let alone dispute, Austin's testimony that no further agreements were issued on the account, nor does James even appear to contend that there have ever been any other agreements which might apply.

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW
EDB
- 7 -

1 as a "covered person" because it is not a "successor," James concedes that PRA is an assignee of
2 the underlying cardholder agreement. *See id*. at 6 (arguing that PRA may not compel arbitration
3 because "there is no blanket rule that an assignee to an account which may have been governed by
4 an agreement containing an arbitration clause is per se able to compel arbitration."); *see also id*. at
5 ("Defendant is at best, the second-generation assignee of accounts and/or receivables.").

James' reading of the agreement and arbitration clause is incomplete and incorrect. The agreement specifically provides that the arbitration clause "shall apply to any Claim . . . by or against us, or you, or any other Covered Person." Dkt. No. 18-3, at ECF p. 11. The agreement elsewhere provides that "[w]e may sell assign or transfer your Agreement and Account or any portion thereof without notice to you . . . If we assign the Account, the assignee shall have the same rights as we do under this Agreement." *Id*. at ECF p. 8. Accordingly, under the express terms of the agreement, the assignment of the agreement to PRA affords PRA "the same rights" as HSBC had under the agreement. Dkt. No. 18-3, at ECF p.11. These rights include the right to compel arbitration. When the agreement states that the arbitration clause may be enforced by "us," it originally referred to HSBC. After assignment, it refers to PRA. Accordingly, the express terms of the arbitration agreement authorize PRA, as an assignee, to enforce the arbitration clause contained therein.

Moreover, under Nevada law, "an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *First Fin. Bank v. Lane*, 130 Nev. Adv. Op. 96, (2014) (internal citations and quotations omitted). Therefore, even if the agreement itself did not expressly authorize assignment of the agreement and state that assignees assume the same rights as HSBC under the contract, under Nevada law PRA stands in the shoes of HSBC and is authorized to enforce the arbitration clause.

**D.  PRA did not waive its rights under the arbitration agreement**

James also argues in the alternative that PRA constructively waived its right to arbitrate James' FDCPA claims by bringing a separate suit in state court. Dkt. No. 22, at 12. This argument is unavailing. To waive the right to arbitrate, a party must have knowledge of an existing right to

1   compel arbitration, act in a manner inconsistent with that existing right, and the opposing party

2   must suffer prejudice therefrom. *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 693, 694 (9th

3   Cir. 1986). Here, there was no waiver as PRA did not have an existing right to compel arbitration

4   of the FDCPA claims against PRA because James had yet to file the instant suit and assert them.

5   As another court has held under similar circumstances, "[b]ringing a lawsuit for debt collection

6   may result in defendants' waiver of arbitration for that case, but it does not bar plaintiffs from

7   compelling arbitration in that action or bar defendants from invoking arbitration in all future

8   separate causes of action that plaintiffs assert against them." *Cage v. CACH, LLC*, 2014 WL

9   2170431, at *1 (W.D. Wash. May 22, 2014); *see also Schwartz v. CACH, LLC*, 2014 WL 298107,

10  at *3 (D. Mass. Jan. 27, 2014). Accordingly, the court finds that PRA has not waived its right to

11  arbitrate the claims at issue in this case.

### E. Equity does not preclude enforcement of the arbitration agreement

James' final argument is that equity prevents the arbitration agreement from being enforced against her. Dkt. No. 22, at 14. James points out several perceived disadvantages she will face in arbitration and asserts that arbitration clauses enable parties to circumvent consumer protection laws such as the FDCPA. *Id*. However, these arguments apply with equal force in most circumstances involving an arbitration clause, and courts routinely uphold arbitration clauses as reflecting the original bargain struck between contracting parties, even in the face of state consumer protection legislation purporting to invalidate such clauses. *See, e.g. AT&T Mobility*, 131 S. Ct. at 1746. Tellingly, James cites no case in support of her equity argument. Nor will arbitration be as disadvantageous as James claims: while she argues that arbitrators "generally have no obligation to provide a factual or legal discussion of their decision in a written opinion," Dkt No. 22, at 15, the arbitration agreement expressly provides that "[t]he arbitrator shall apply substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law upon request." Dkt. No. 18-3, at ECF p. 11. The court finds no equitable grounds on which reject the arbitration agreement.

## IV. ORDER

For the reasons set forth above, the court finds that PRA has shown the existence of an

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW          - 9 -
EDB

1  arbitration agreement and that the agreement encompasses the claims asserted by James in this
2  case. Accordingly, the court grants PRA's motion to compel arbitration. Pursuant to Section 3 of
3  the FAA, 9 U.S.C. § 3, the court hereby stays this action pending arbitration of James' claims.
4      **IT IS SO ORDERED**.
5  Dated: February 20, 2015



Ronald M. Whyte
United States District Judge

ORDER COMPELLING ARBITRATION
Case No. 14-cv-03889-RMW EDB    - 10 -